UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DREVON ANDREW GRANT,

          Plaintiff,

v.                                   Case No. 23-CV-142

JOHN KROLIKOWSKI,

          Defendant.

## DECISION AND ORDER

Plaintiff Drevon Andrew Grant, who is representing himself and currently confined at Oshkosh Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. Grant was allowed to proceed on a claim against defendant Krolikowski pursuant to the Eighth Amendment for allegedly squeezing Grant's testicles during a strip search. Krolikowski filed a motion for summary judgment, which is fully briefed and ready for a decision. (ECF No. 28.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 3, 11.)

## FACTS

At all times relevant Grant was incarcerated at Racine Correctional Institution. (ECF No. 30, ¶ 1.) Krolikowski was a correctional sergeant employed at Racine. (*Id.*, ¶ 2.)

Krolikowski states that on October 29, 2021, while he was conducting rounds on the housing unit, he "noticed an odor that smelled that tetrahydrocannabinol (THC)

mixed with prayer oil." (ECF No. 30, ¶ 7.) In Krolikowski's experience, prisoners who attempt to use THC in their cells often try to cover up the smell with prayer oil. (*Id.*, ¶ 8.) Krolikowski was aware that Grant had been found guilty of using intoxicants early that year in July. (*Id.*, ¶ 9.) Based on the strength of the odor outside Grant's cell, Krolikowski decided to conduct a cell search. (*Id.*) During the cell search, he noticed that "near Grant's bed there was a black charring on the outlet that appeared to be fresh because it wiped off easily and was clearly visible on a blue examination glove." (*Id.*, ¶ 11.) In Krolikowski's experience, "this is an indication the outlet had been used recently to ignite something." (*Id.*) Krolikowski determined that Grant needed to submit to a urine analysis test. (*Id.*, ¶ 12.) Grant denies using THC because during Krolikowski's rounds that day he was on the phone. (ECF No. 39, at 2 ¶ 1.)

Krolikowski sought and obtained approval from the supervising lieutenant (not identified and not a defendant) to conduct a urine test. (ECF No. 30, ¶ 15.) It is Department of Adult Institutions (DAI) policy that a strip search must be performed prior to obtaining a urine sample. (*Id.*, ¶ 16.) The parties dispute whether Krolikowski escorted Grant to the Segregation Property department to conduct the search and test or whether Grant reported to Segregation Property. (*Id.*, ¶ 14; ECF No. 39 at 5, ¶¶ 1-2.) Grant states that, prior to the strip search, Krolikowski conducted a pat down search during which he grabbed and squeezed Grant's testicles. (ECF No. 39 at 5, ¶ 3.) Krolikowski states that the pat down search was procedurally required before conducting the strip search because he needed to make sure that Grant did not have weapons or contraband on him. (ECF No. 30, ¶ 41.) This included patting down the

2

genital area. (*Id.*) Krolikowski then instructed Grant to remove his clothes and had Grant show him various areas of his body. (ECF No. 39 at 5, ¶ 4; ECF No. 30, ¶ 17.) It is undisputed that Krolikowski did not touch Grant's body or hair during the strip search. (*Id.*, ¶ 19.)

Once the strip search was complete, Krolikowski asserts that he handed Grant his clothes so he could get dressed and then had Grant provide the urine sample. (ECF No. 30, ¶ 18.) Grant maintains that Krolikowski had him provide the urine sample while he was still nude. (ECF No. 39 at 5, ¶ 4.) Grant complained to Krolikowski about this because he is Muslim and it is against his religion to be naked in front of another man. (*Id.*) Krolikowski refused to provide Grant his clothes and told him to urinate in the specimen cup. (*Id.*, ¶ 5.) Grant had to defecate as well, told Krolikowski so, and in response, "Krolikowski grabbed me yelling, 'catch that piss shooting out your dick.'" (*Id.*) When Grant was done, Krolikowski told him to "'wipe my tussy' while smirking." (*Id.*, ¶ 6.) Once Grant cleaned himself up, Krolikowski handed him back his clothes. (*Id.*, ¶ 7.)

Grant also alleges that Krolikowski did not follow proper procedure in conducting the urine test, including failing to record the correct information on the cup label, failing to properly seal the specimen cup, and not removing the cup from the testing location until it was properly sealed. (ECF No. 39 at 14.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

3

(1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Grant was allowed to proceed on a claim that Krolikowski violated his Eighth Amendment rights when he grabbed and squeezed Grant's testicles during the search[1]

---

[1] Krolikowski argues that, because the grab took place during the pat down search and not during the strip search, Grant was not allowed to proceed on that basis. However,

prior to the urine test. "In the context of searches of prisoners, only searches that are maliciously motivated, unrelated to institutional security, and lack a legitimate penological justification violate the Eighth Amendment." *Rivera v. Drake*, 497 Fed. App'x 635, 637 (7th Cir. 2012) (citing *Whitman v. Nesic*, 386 F.3d 931, 934 (7th Cir. 2004)). To demonstrate that a search violated the Eight Amendment, a plaintiff must show that the search was "conducted in a harassing manner intended to humiliate and inflict psychological pain." *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003).

Where a "defendant had no intention of humiliating the plaintiff or deriving sexual pleasure from fondling his private parts but was merely overzealous in conducting the pat down and strip search, there was no deliberate violation of a constitutional right and so no basis for the suit." *Washington v. Hively*, 695 F.3d 641, 643 (7th Cir. 2012). *Washington* makes clear that evidence of the manner and the duration of the touching is important, finding that where a plaintiff asserted that a defendant "spent five to seven seconds gratuitously fondling the plaintiff's testicles and penis through the plaintiff's clothes" and then while the plaintiff was nude fondled him another two to three seconds, the plaintiff demonstrated a constitutional violation. *Id.* at 642. However, the court also noted that not every touch to the genital area is a constitutional violation. *Id.*

Even when taking the facts in the light most favorable to Grant, there is no evidence that Krolikowski intended to humiliate him, derive sexual pleasure from the

---

the July 5, 2023, screening order clearly notes that Grant alleged the grab took place during the pat down search. (ECF No. 7 at 3.)

5

pat down search, or even that Krolikowski was overzealous in his pat down—Grant presented no evidence at all other than that he was touched in the area of his genitals. No reasonable factfinder could conclude that Grant was touched in a manner designed to humiliate him or to derive sexual pleasure from him.

At most, Grant attempts to argue that grabbing his testicles, when considered with other details of the search, demonstrates that Krolikowski intended to humiliate and harass him: Grant had to take the urine test while nude; Krolikowski did not follow proper procedure to obtain the urine sample; and standing nude violated the tenets of his religion. However, the Seventh Circuit Court of Appeals has found that a plaintiff who was forced to stand naked for twenty minutes during a drug test did not suffer a violation of his constitutional rights. *Whitman*, 368 F.3d at 935. Also, "[s]ection 1983 protects against 'constitutional violations, not violations of . . . departmental regulation and . . . practices[.]'" *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) (quoting *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)).

Grant was not allowed to proceed on a claim that his prolonged nudity and that Krolikowski's failure to follow proper procedure when obtaining the urine sample violated his constitutional rights. Nor was he allowed to proceed on a claim that Krolikowski violated his constitutional rights by causing him to engage in conduct that violated his religious beliefs. Those facts are considered here solely to determine whether, coupled with the facts related to the pat down search, they suggest that Krolikowski intended to humiliate and harass him. They do not.

6

Taking all of these facts in the aggregate—the grab during the pat down search, the prolonged nudity, the procedural violations, and the violation of Grant's religious beliefs—Grant fails to demonstrate that Krolikowski was acting in any manner other than to ensure institutional security and safety. Prison officials "must be able to handle, sometimes manhandle, their charges," which includes ensuring the prison population is not exposed to banned intoxicants. *Washington,* 695 F.3d at 643-44. As such, no reasonable factfinder could conclude that Krolikowski, in patting down Grant violated Grant's Eighth Amendment rights.

Summary judgment is granted in Krolikowski's favor.

## CONCLUSION

For the foregoing reasons, Krolikowski's motion for summary judgment is granted. Krolikowski also argued that he was entitled to qualified immunity, but because the court found in his favor on the merits it does not need to address the qualified immunity argument. Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendant's motion for summary judgment (ECF No. 28) is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court

a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 30th day of January, 2025.

BY THE COURT

WILLIAM E. DUFFIN
United States Magistrate Judge

8

Case 2:23-cv-00142-WED   Filed 01/30/25   Page 8 of 8   Document 52